First case this morning, Sigma Network v. The Workers' Compensation Commission, 4080931. Good morning, Your Honors. Tony Tomaso with Kyle Royster of Elk Grinnellen here on behalf of the appellant at Sigma Network. My understanding is that the appellee is not going to be here? That's my understanding as well. All right, then you will be allotted 15 minutes. Thank you, Your Honor. Please proceed. Thank you, sir. May it please the Court. Your Honor, the standard here is manifest weight. Obviously, we're not going to argue against that. However, under the circumstances of this case, we are adamant that the facts before us clearly show that the commission's finding is indeed against the manifest weight of the evidence. We're going to go through that evidence this morning in order to focus in on what it is that the commission was in error regarding. This evidence will show we're dealing with a simple right wrist muscle strain that lasted for a total of 12 weeks. This injured individual was then released at that time at full duty and went back to work at full duty. Seven months went by at that point when he reported a new injury. If we focus on Petitioner's Exhibit No. 2, Your Honors, particularly the initial emergency room report, first and foremost, look at the timing. The accident was February 3rd. This gentleman did not go and seek out medical treatment until a week later on February 10th. Therefore, one can conclude and infer it wasn't that significant of an injury to begin with. When we look at that actual treatment record, he's in slight discomfort. He's not given narcotics but merely given ibuprofen and released with a diagnosis of a contusion and a sprained strain. Does he follow up immediately for additional medical care and treatment? Absolutely not. Three days go by and he shows up at Carl Clinic and is treated by Allison Jones. This is in Petitioner's Exhibit No. 3. On February 13th, the physical exam is relatively normal at the right wrist and there are no complaints or evidence of swelling at that location. There's no loss of grip strength and he says he's not having any problems at work. Repeat x-rays were done to compare to the emergency room x-rays and it ruled out a fracture. So again, we have a soft tissue injury, no fractures, no major complications or issues. What did your Dr. Poperski have to say about this? Dr. Poperski had the opportunity to review all the records and he felt, again, Your Honor, that based upon the subsequent MRI and the subsequent x-rays that were taken in November of 2006, that it was a widening of the scaphio-lunite joint which required surgery, but that he related that to his truck driving activities after the time sequence when he went out on his own after June 6th of 2006. What does he mean when he says it will appear from the available medical records that the derangement at the right wrist is as a result of the reported injury? The new injury of what we're speaking of, Your Honor, is exactly what we're referencing. It is the new accident injury that he suffered at his new employment when he went out on his own as a truck driver. Did he also comment that he had no history of a new injury? Self-serving testimony and history provided by this petitioner based upon the inference that when he went out on his own, Your Honor, the evidence clearly showed the inference is reasonable that he had nothing but to try to refer back to him. Did you have any medical opinion that this man's injury was not possibly related to his work accident? I believe the medical evidence in the form of his treatment records, which we've fed right to you. I ask you, did you introduce any medical opinion that this man's injury was not possibly related to his work accident? That's a yes or a no. Yes, Dr. Papirsky's. Papirsky said that it was related as a result of the reported injury. The reported injury is the injury's work. It's not the new injury because Papirsky said that performing the duties of a truck driver could have exacerbated the wrist injury, but he had no history of a new injury. So he didn't opine that it was as a result of a new injury. I'll respectfully disagree with that interpretation of Dr. Papirsky's reported injury. I'm reading an exact quote. I understand, Your Honor. I have no history of a new injury, close quote. Now, did he say it or didn't he? That's based upon the information provided to him by this petitioner, which is self-serving, and that's the argument that the appellant herein is making. Looking further at the treatment records I was referencing before from Dr. Allison Jones, we look at the February 13th note, which says he's not having any major difficulties at work, no loss of grip strength. We jump ahead in time one month to March 16th of 2006. The petitioner says, I'm feeling a lot better. My new brace is helping me. Physical exam again is good. Full range of motion, equal strength with both wrists, minimal tenderness. The diagnosis includes a notation that he's stable and he's improving regarding the right wrist condition. Again, we jump ahead another month. Petitioner's exhibit number three includes Dr. Jones' April 14th note. Again, he tells the doctor, I'm feeling much better. I want to go back to work. And the doctor says, you know what? I'm going to let you go back to work. Just work smart. Again, this is something that he's admitted to. And then the key record, I believe, is the final note from April 28th, 2006. Again, he notes, I'm better. The wrist is not bothering me at all. This is a normal progression of a simple strain. He notes that he rarely uses his wrist splint, and he wants to go back to work, and he believes he can go back to work. The doctor allows it and releases him PRN. Now, let's compare that to his self-serving testimony during the trial itself. On pages 126, he claims, my right hand was swollen and painful since the day of the accident all the way through to November 2006. What do we do? Do we just ignore what the doctor said and just base it upon what he said he did or didn't do? Absolutely not. I believe that when we say the case law to support the notion that what you tell a doctor is reliable, credible, based upon the fact that an individual wants to tell the doctor the truth so that he can help himself. Based upon what he said, the doctor recommended surgery. The doctor recommended surgery as of November 2006. Both Dr. Sobeski and Dr. Papierski both recommended the surgery based upon the worsening of his condition, which is our argument happened when he left our employment and became self-employed. At that time, that surgery was reasonable. Surgery was never indicated, never talked about, never considered between February 2006 and April 28, 2006. He reached maximum medical improvement. Now, his self-serving testimony trial tries to wiggle out of that, saying, oh, I was having problems the whole time. Well, that's not supported by the actual evidence. Here's the problem with your argument when you use the phrase self-serving. Let's assume that it is self-serving. You indicated the test of review or the standard of review is manifest weight of the evidence. Couldn't the commission base its entire decision on his testimony? Well, herein lies the problem, Your Honor. The credibility, although being weighed by the commission, is not supported by the evidence. The manifest weight of the evidence here should be clear based upon those February to April treatment records in 2006. You're doing this in segments is the problem. You try to exclude the impact or the efficacy of the doctor's opinions alone. Then you look at the claimant in isolation saying he's not credible. But you have the claimant clearly testifying that he had no prior hand or arm injuries prior to the date of the accident. He continues to have pain. The doctors back up the opinion of his testimony that the accident was caused related to the injury or was caused related to the accident. So how does the commission discount all of that? What evidence is there against that other than you picking apart the opinions? I'm going off of his testimony, excuse me, his admissions to his treating physicians. Specifically, let's look at the April 28th note. He's admitting, I'm not having any problems. I'm not having any pain. I'm barely using my brace. I want to go back to work. I know I can do it. Okay, I'm going to let you do it. And then he comes back at the time of trial and says, well, I was having pain the whole time. I was using my brace the whole time. I was having numbness and tingling the whole time. Well, wait a minute. That's not in any of the records anywhere, yet the commission relied upon it. That's inconsistent with the actual records. Therefore, the credibility of this witness should have gone down the drain right then and there. But that's up to the commission to assess his credibility, isn't it? Absolutely. That's why I'm here today, Your Honor, to point out these inconsistencies and that the commission made a mistake. And based upon manifestly the evidence, it needs to be overturned. We also note, Your Honor, as I pointed out before, that clearly he has an exacerbating circumstance when he suffers a new injury, dating back to the time sequence when he goes and works for himself, during the time sequence of June to November of 2006. If we look again at the objective testing, we have the ability to compare the x-rays from November to the x-rays of March. And we also have the ability to look at the MRI from November of 2006. Clearly, they show a widening of the scapholunate space. That was not apparent. That was not seen. That was not diagnosed by anybody in March of 2006, April of 2006. That didn't come about until seven months later. Therefore, the opinion that he needed the surgery was valid. We're not arguing that point, but what we're arguing is there's no causal relationship. When did he leave the employment of your client? June 6th of 2006. So your argument in a nutshell is that in April there's medical evidence which contradicts his testimony, objective, so to speak, medical evidence that the condition, and you're saying it's MMI at that time and there's no discussion or recommendation of surgery, correct? That's correct, Your Honor. And then after he leaves the employment of your client and becomes self-employed in November, there's a distinction between the x-rays, right? That's a clear distinction that has been made, and that was pointed out both by Dr. Sobeski and Dr. Papiriski. It's against the manifest way of the evidence for the commission to find that the condition in November, necessitating surgery was caused by is? Our accident date of February 3rd, 2006. That's correct, Your Honor. So it's our contention we're responsible for February 3rd, 2006, date of accident, up until the point of MMI of April 28th, 2006. Anything after that date clearly unrelated to our accident date, based upon the objective medical evidence. How could the arbitrator be so wrong in referring to Dr. Papiriski as Justice Hoffman has indicated and made all these reports, statements, that it was the result of a reported injury? Your Honor, if you could ask that question again, I don't know if I understood it. Dr. Papiriski says these things are the result of the reported injury, and if that is true, how can it be against the manifest way of the evidence? Your Honor, as I stated before, it is our position that the new injury that the doctor is referring to is during his employ as a self-employed trucker. What do you base that on? I base that on the self-serving testimony of the petitioner. I base that on Dr. Papiriski's two IME reports, the second one explaining the first, and also the inferences from the actual treatment records from April 28th, 2006. What's the evidence he had a second injury? Your Honor, there was no witness to that. That is what we have based upon the records. Do I have an accident report? Absolutely not. That is our position based upon the evidence and the inference made therefore. But there's no reported injury other than the incident that occurred when he was an employee of your client. That's correct, Your Honor. It is our contention that the man who went into self-employment at that time had only one choice, which was if I can't get this taken care of because I'm not insured, I'm self-employed, now I have to get this related back. So he was back up against it, and this is what he needed to do. Yeah, but I think you're trying to say to the court that the reference to reported injury is something that occurred while he was self-employed beginning in June. Am I correct? Sometime between June and November. That's correct. Okay, but there's nothing. If you could find something in the medical record during that period of time with the doctor where he's discussing an injury while he's self-employed. I think what we need to look at is what the actual complaints were and where they were and what the actual medical records say, and we can infer from that if I can speak to that point. But it wouldn't be a reported injury because nobody reported it. Why would he call it a reported injury? Well, that's our point. He's not going to do that because he would, in essence, shoot himself in the foot and lose his claim. So what he needs to do is try to refer it back to the original accident date. But if you look at the medical, the complaints are not at the same location. His complaints during our time sequence was at the radial side, and the new complaints were at the older side. Why does the doctor call it a reported injury when nobody reported it? You're saying the reported injury is something that happened after April, but nobody reported that. So why did the doctor come up with this terminology all of a sudden? I believe Dr. Papirsky made that analysis and came to that conclusion based upon evidence he had before him that it had to be a new injury because it's at a new place. Wait a minute. He said he had no information of a new injury. He said that. Dr. Papirsky said that. I have no information of a new injury. From the petitioner. And that's my point. The petitioner is not going to tell him, oh, I suffered a new injury. When did this injury take place? Where was it? When did it happen? Your Honor, it's our position sometime between June and November, during his workplace activities as a self-employed truck driver, he injured himself based upon the evidence that it's at a new location, there's new complaints, and there's a wide need of that scaffolding joint. It wasn't present there before. So what you're saying is his visits with the doctor after he becomes self-employed and makes the complaints of ill-being would be what the new injury is that's being referred to by the doctor. That's correct, Your Honor. Here's where the problem boils down to. You're asking us to draw inferences, which would be a legitimate argument, but inferences are usually drawn from facts. What facts are there of a new injury? You're asking us to infer something from nothing. I disagree respectfully, Your Honor. What are we referring this from? I'm referring to, if you compare and contrast the April 28, 2006 report, where he was clearly at MMI with no complaints, able to go back to work. And he does. November 22, 2006, he comes in, I can't do this anymore, I'm in too much pain, what's going on? It hurts, it hurts, it hurts. And he even testifies during the trial that it worsened after he started his new employment. And then he tries to backpedal from that testimony. Well, if you want to look at the facts, though, why couldn't you infer that this was the aggravation of a preexisting condition caused by the employment of your client? I'm going off of the facts as we see them with the new complaints being on a different side of the wrist, the widening of that scaphio-lunar joint, that is all objective information based upon what the petitioner told his doctors and what the objective test showed. And based upon that, it is our position that there is no causal connection between his subsequent complaints after April 28, 2006 and his need for that surgery. Therefore, we are asking, based upon the manifest weight standard, that this be overturned. Thank you, counsel. Thank you. This court will take the matter under advisement for disposition. The record will show the athlete did not appear for argument.